```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CARMEN MARTUCCI,<br><br>              Petitioner,<br><br>    v.<br><br>JORDAN HOLLINGSWORTH,<br><br>              Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-8203 (JBS)<br><br>**OPINION** |

APPEARANCES:

EDWARD V. SAPONE, Esq.
40 Fulton Street
23rd Floor
New York, New York 10038
    Attorney for Petitioner Carmen Martucci

DAVID VINCENT BOBER, Esq.
Office of the U.S. Attorney
402 East State Street
Room 430
Trenton, New Jersey 08608
    Attorney for Respondent Jordan Hollingsworth

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

    This matter comes before the Court on Carmen Martucci's ("Petitioner") petition for writ of habeas corpus challenging a disciplinary proceeding at FCI Fort Dix. Petition, Docket Entry 1. Respondent Jordan Hollingsworth opposes the petition. Answer, Docket Entry 8. The petition is being decided on the papers

pursuant to Fed. R. Civ. Pro. 78(b). For the reasons set forth below, the petition is denied.

## II. BACKGROUND

In March 2013, Petitioner pled guilty in the Eastern District of New York to possession of cocaine with the intent to distribute, 21 U.S.C. §§ 841(b)(1)(C), 846. Petition ¶ 13. He was sentenced to a 63-month term of imprisonment followed by a 3-year period of supervised release in September 2013. *Id.* ¶ 14. In March 2014, he was sentenced in the District of New Jersey to a custodial term of 24-months, which was to be served concurrently with his New York sentence. *Id.* ¶ 16; *United States v. Martucci*, No. 14-118 (D.N.J. Mar. 18 2014). The Federal Bureau of Prisons ("BOP") eventually designated FCI Fort Dix, New Jersey as Petitioner's place of confinement. Petition ¶ 17.

While at Fort Dix, Petitioner participated in the BOP's Residential Drug Abuse Program ("RDAP"). He was transferred to a residential re-entry center ("RRC") named Toler House on April 7, 2015 in order to complete the program. Declaration of Tara Moran ("Moran Dec.") Exhibit 4. He was permitted to be on home confinement on the condition that he attend counseling and provide urine samples to Toler House two to four times a week. Petition ¶¶ 20-23.

Toler House collected a urine sample from Petitioner on May 21, 2015. According to the incident report, the sample was

2

tested on June 1, 2015 and came back positive for morphine. Incident Report, Moran Dec. Exhibit 5 § 11. "When the result was reviewed in detail it stated: 'POSITIVE MORPHINE 340 ng/ml.'" *Id.* Petitioner was notified of the positive result on June 1 and informed of his right to remain silent. *Id.* § 23. Again, according to the incident report, Petitioner made the following statement:

> I missed TDAT[1] on Thursday. I called TDAT and told them I could not come to the appointment. I was taking Zyrtec, Zycam, and [Tylenol] that my wife gave me. There was something else that she gave me. I think it was a [Benadryl] . . . This is crazy. I haven't taken anything. I haven't done anything.

*Id.* § 24. He also indicated he took Allegra D and Zycam nasal spray that had been given to him by his wife for his allergies. *Id.* Petitioner was transferred to MDC Brooklyn. Petition ¶ 31. He was charged with violating Code 112.[2] Incident Report § 26. The Incident Report was referred to the Center Discipline Committee ("CDC") for a hearing. *Id.* § 27.

On June 8, 2015, Petitioner's attorney wrote to the Disciplinary Hearing Officer ("DHO"), arguing that Petitioner had been suffering from allergies and a sinus infection the past week. Petitioner's Exhibit C at 2. He asserted Petitioner had been taking Zyrtec, Zycam, Allegra D, Benadryl, and Nasal Four

---

[1] "'TDAT' is a reference of the BOP's Transitional Drug Abuse Treatment program . . . ." Answer at 3 n.2.
[2] *See* 28 C.F.R. § 541.3.

3

nasal spray in an effort to alleviate his symptoms. *Id.* According to the letter, Petitioner had informed his Toler House counselor of his illness and the medications he was taking. *Id.* at 3. On May 28, he was diagnosed with an upper respiratory infection and prescribed Levaquin. *Id.* He argued that Allegra-D and the Nasal Four could have caused a false positive for morphine. *Id.*

The disciplinary hearing took place on June 9, 2015 at MDC Brooklyn. Petitioner requested a staff representative and his wife as a witness to testify as to "what medicine he's taken." Notice of CDC Hearing, Moran Dec. Exhibit 6 at 2. A staff member was appointed to represent him, but his wife was not called as a witness. CDC Report, Moran Dec. Exhibit 8 at 2. She did submit a written statement. *Id.* Mrs. Martucci indicated in her statement that it was "an impossibility" that Petitioner "ingested an illegal substance." *Id.* at 7. "Carmen has been sick for the past 2 weeks, with severe allergies as well as a sinus infection. The half-way house is aware of this he was seen by a doctor and given a prescription for antibiotics. He has also taken Zyrtec, Allegra D, Tylenol, Aleve Nasal Four and Zicam. Many of these medications are widely known to cause a false positive drug test for morphine and amphetamines." *Id.* She indicated they would be willing to pay for a hair follicle test. *Id.*

In reaching its decision, the Committee considered the Incident Report and Investigation as well as the "CBPA, Orientation Attendance, Receipt of resident handbook, pages of the resident handbook pertaining to narcotics, Chain of Custody for Drug Analysis #320709138, and Drug test report #320709138, witness statement, Support request from lab."[3] *Id.* § III.D. It also reviewed a note from Petitioner's doctor confirming Petitioner was being treated for an upper respiratory infection with Benadryl, Zyrtec, Thera-Flu, and Levaquin. *Id.* at 8. The doctor was unable to say for certain "if any of these medications may have influenced [Petitioner's] drug screening results." *Id.*

The CDC found Petitioner to have violated Code 112. The committee stated: "Inmate Martucci's wife indicated that he was at the Doctor on 5/28/15. Martucci urine was taken on 5/21/15." *Id.* § V. It further noted that his previous urine tests had all been negative. *Id.* It recommended Petitioner "be deemed a program failure" as "Toler House has a zero tolerance policy regarding the use of any narcotics as it poses a security risk to Toler House residents, staff, and the community at large."

---

[3] The "support request from lab" was an email to the testing lab inquiring if a combination of Zyrtec, Allegra D, Tylenol, Aleve Nasal Four, and Zicam would cause a false positive. CDC Report at 11. The laboratory director responded that Tylenol with Codeine could cause a false positive, "[h]owever the information does not clarify whether the Tylenol contained codeine." *Id.*

*Id.* §§ VI-VII. Upon review of the CDC's findings, the DHO upheld the determination and sanctioned Petitioner to loss of 40-days good-conduct time and 50-days of non-vested good-conduct time. *Id.* § X; DHO Checklist, Moran Dec. Exhibit 11. Petitioner was eventually transferred to FCI Fort Dix.

Petitioner thereafter exhausted his administrative remedies,[4] followed by this habeas petition. Petitioner originally named several persons besides Fort Dix Warden Hollingsworth as Respondents. In ordering the United States to answer the petition, the Court dismissed the other persons as the only proper respondent in a habeas proceeding is Petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 (2004). Respondent filed its answer on January 19, 2016. Petitioner did not submit a traverse.

## III. ANALYSIS

Petitioner argues he was denied due process of law in the course of his disciplinary hearing. He challenges the result of the hearing and the sanctions of the loss of his good-conduct credits and expulsion from the RDAP program.

### A. Due Process

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward

---

[4] Respondent concedes Petitioner exhausted his administrative remedies. Answer at 7 n.5; Moran Dec. ¶¶ 4-5.

6

their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and quotation marks omitted). "Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake." *McGee v. Schism*, 463 F. App'x 61, 63 (3d Cir. 2013) (per curiam). In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Moreover, the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558).

    *1. Wolff Factors*

    Under *Wolff*, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Id*. at 454 (citing *Wolff*, 418 U.S. at 563-67). A review of the record

7

indicates Petitioner received all of the due process protections to which he was entitled under *Wolff*.

Petitioner admits he received advanced written notice of the charges on June 1, 2015. Petition ¶ 29; Petitioner's Exhibit B. He was represented by a staff member at the hearing, and his wife submitted a written statement on his behalf. CDC Report at 7. The fact that his wife did not appear in person does not create a Due Process violation. The right to call witnesses and present documentary evidence is not absolute under *Wolff*; prison officials may limit the appearance of witnesses when their appearance would "be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566; *see also Howard v. Werlinger*, 403 F. App'x 776, 777 (3d Cir. 2010) (per curiam) ("Prisoners may call witnesses and present evidence as long as it would not be hazardous to prison safety or correctional goals.").

The record indicates Mrs. Martucci was not called as a witness because she provided a written statement. CDC Report at § III.C. Federal regulations indicate inmates' witnesses may not be permitted to appear if "in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence." 28 C.F.R. § 541.8(f)(3). Petitioner requested that his wife testify as to the medications he was

8

taking at the time of and prior to the test. Notice of CDC Hearing at 2. Her written statement indicated Petitioner took Zyrtec, Allegra D, Tylenol, Aleve Nasal Four, and Zicam. CDC Report at 7. As Mrs. Martucci's written statement already contained the information Petitioner wanted to present to the CDC, it was within the BOP's discretion to not permit her to appear. Petitioner's hearing complied with this *Wolff* requirement.

Petitioner also received a written statement of the evidence relied on and the reasons for the revocation of his credits. The fact that a hearing was conducted by the CDC, not the DHO, does not violate Due Process. "In its Program Statement 7300.09, *Community Corrections Manual*, the [BOP] provides for a slightly modified procedure for prisoners confined to a Residential ReEntry Center in anticipation of release. That is, for RRC prisoners, the in-person disciplinary hearing is conducted before the RRC's Center Disciplinary Committee." *Bellamy v. Hollingsworth*, No. 13-7783, 2014 WL 714905, at *5 (D.N.J. Feb. 21, 2014). "[T]he Federal Bureau of Prison Program Statement makes clear that [Petitioner] was entitled only to have [the] DHO review and certify that the CDC complied with *Wolff*." *Abbott v. Hollingsworth*, No. 14-6784, 2015 WL 1952355,

9

at *5 (D.N.J. Apr. 29, 2015);[5] *see also* DHO Checklist. He was not entitled to appear personally before the DHO, nor was he entitled to a DHO report. The written statement from the CDC complies with *Wolff*'s requirement that Petitioner be informed of the evidence considered and reasons for revocation.

The Court finds that the disciplinary proceedings complied with the standard set forth in *Wolff*. The Court must now determine whether there exists "some evidence" in the record to support the decision.

*2. Some Evidence*

Petitioner's main argument is essentially a challenge to the sufficiency of the evidence used to sanction him. He asserts the CDC failed to adequately consider the possibility that the result was a false-positive due to the combination of medications Petitioner was using to treat his illness. He also

---

[5] The Program Statement also notes that the DHO shall review the CDC report for compliance with *Wolff* "[o]rdinarily, within three working days of receipt[.]" BOP Program Statement 7300.09 (Community Corrections Manual), § 5.7.3 (emphasis added). The use of the word "ordinarily" suggests this is not a mandatory timeframe. Even if it were, Petitioner does not show how the minimal delay in the DHO's review, or any other alleged violation of the program statements, harmed him. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (noting it would be "entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *see also Ortiz v. Holt*, 390 F. App'x 150, 152 (3d Cir. 2010); *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (quoting *Powell*).

argues 300ng/ml is insufficient to form the basis of a positive result as the Federal Workplace Drug Testing Program raised the level to 2000ng/ml from 300ng/ml in order to guard against false positives. Petition ¶ 38(c).

Petitioner's argument boils down to an assertion that the CDC gave too much weight to the positive drug test and not enough to his evidence that the result may have been a false positive. His submissions ask the Court to conduct an evaluation of evidence that was not presented to the CDC and essentially conduct a new hearing. This is not the Court's function under *Wolff* and *Hill*. "Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455).

Here, the CDC based its decision in part on the incident report. The report indicates that upon becoming aware of the positive result, Petitioner's case manager "reviewed the resident[']s file and found that he does not take any medication

11

that would cause a positive result on a urinalysis." Incident Report § 11. Contrary to Petitioner's assertions, it would appear from the record that the case manager did consider alternative possibilities for a positive result before creating the report. Although "[t]he 'some evidence' standard may be satisfied solely by an incident report," *McCarthy*, 631 F. App'x at 86 (citing *Hudson v. Johnson*, 242 F.3d 534, 536–37 (5th Cir. 2001); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)), this was not the only evidence considered by the CDC.

The relevant portions of the handbook were also considered. The Toler House handbook contains a notice that the facility is a zero tolerance program and warns against using certain over-the-counter products. "Utilizing these substances are not a valid reason for a positive toxicology screening." CDC Report at 13. Although the medications Petitioner used may not have been on the list of specifically-prohibited medications, he did have notice that using over-the-counter medications could be considered to violate the zero tolerance policy if there was a positive toxicology report.

Having reviewed the findings of the CDC, the Court concludes that there is some evidence in the record to support those conclusions. The written findings show that the CDC weighed the conflicting evidence and concluded the greater weight of the evidence indicated there had been a violation. The

committee considered Petitioner's wife's statement, but noted that Petitioner provided the positive sample before going to the doctor and before Petitioner's wife purchased the medicines. *See* CDC Report § V; Petitioner's Exhibit C at 11; Petitioner's Exhibit H at 2. Having found some evidence to support the findings, the Court must therefore uphold the disciplinary decision.

   *3. Sanctions*

   Petitioner also challenges the severity of the sanctions imposed. Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed "Greatest Severity Level Prohibited Acts." 28 C.F.R. § 541.3. The loss of 40-day good-conduct time and 50-days non-vested good-conduct time is within the permitted sanctions for a Code 112 violation. 28 C.F.R. § 541.4(b)(1). There is no basis to overturn the imposed sanctions.

**B. Expulsion from RDAP**

   Petitioner asserts he has a liberty interest in participating in RDAP. This is not the case. Prisoners have no constitutional right to be assigned to a particular institution, facility, or rehabilitative program. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224–26 (1976); *Wilkerson v. Samuels*, 524 F. App'x 776, 778 (3d Cir. 2013) (per curiam); *Magnin v. Beeler*, 110 F. Supp. 2d 338, 340

n.2 (D.N.J. 2000). Once Petitioner was found to have violated the program's rules, expulsion was mandatory under the relevant federal regulation that was in effect at the time of the hearing. 28 C.F.R. § 550.53(g)(3);[6] *see also Douvos v. Quintana*, 382 F. App'x 119, 122 (3d Cir. 2009) ("[E]xpulsion from a rehabilitative program for a violation of its rules and regulations 'falls within the expected perimeters of the sentence imposed by a court of law.'" (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995))). The BOP's decision to remove Petitioner from RDAP did not violate his Due Process rights.

## IV. CONCLUSION

For the above stated reasons, the petition is denied. An accompanying Order will be entered.

| | |
|---|---|
| **August 1, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[6] The regulation was amended to remove this subsection effective May 26, 2016. Drug Abuse Treatment Program, 81 Fed. Reg. 24484-02 (Apr. 26, 2016) (to be codified at 28 C.F.R. pt. 550).

14